UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

EDWARD JORDAN                           CIVIL ACTION NO. 04-1540-P

versus                                  JUDGE HICKS

WARDEN BURL CAIN, ET AL.                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Edward Jordan ("Petitioner") of armed robbery.
Petitioner was adjudicated a second felony offender, and the trial court sentenced him to
serve 58 years at hard labor without benefits. Petitioner pursued a direct appeal and a post-
conviction application. He now seeks federal habeas relief on several grounds. It is
recommended, for the reasons that follow, that his petition be denied.

### Background Facts

The state appellate court set forth most of the relevant facts in its decision on direct
appeal. State v. Jordan, 813 So.2d 1123 (La. App. 2d Cir. 2002), writ denied, 845 So.2d 1067
(La. 2003). The following recitation of facts borrows heavily from that decision.

Shortly after midnight on October 8, 1999, attorney Joseph Greenwald, drove his
black Mercedes into the parking lot of the Best Western Hotel at the corner of Spring and
Lake Streets in Shreveport. As he was driving into the parking lot, he observed two black
males standing on the north side of Lake Street. After parking and locking his car, Greenwald

walked toward the entrance to the hotel, but he was stopped about five yards from the door by the same two men he had seen earlier.

One of the men, who was wearing a blue and white hockey shirt, pointed a .38 caliber pistol in Greenwald's face and ordered him to go back to his car. Greenwald was face-to-face with the armed assailant, who demanded his car keys, billfold and money. Greenwald gave the gunman approximately three to four hundred dollars from his pocket. Once at the car, an argument ensued when the gunman demanded Greenwald's billfold, which Greenwald told him was locked inside the car. The gunman, later determined to be Petitioner, then threatened to shoot Greenwald. While the robbers were having difficulty unlocking the vehicle, Greenwald escaped by running into the hotel lobby. A few moments later, he saw his black Mercedes being driven away.

The police were called. Greenwald told them that he had viewed the robbers for three to four minutes during the crime. He described the offender with the handgun as a black male in his mid-twenties, tall and wiry, approximately 170 lbs., wearing a blue and white hockey jersey. The second offender was described as a black male, a little shorter at 5'10" to 5'11" tall, approximately 150 to 160 lbs. and wearing a white pull-over.

While at the scene, police officers interviewed two other witnesses who stated that they saw the two black males with the victim, but neither witness saw a gun. The witnesses described one offender as a black male in his mid-twenties, tall and wiry, approximately six feet tall, brown skin, 150 to 160 lbs., short hair, and wearing a blue and gold jogging suit.

The second offender was described as a black male in his mid-twenties, approximately 5'11",
brown skin, 150 lbs. and short hair. During an interview later on the day of the incident,
Greenwald described the offender with the gun as a black male in his late teens to early
twenties, approximately 5'11" 145-160 lbs., short hair, dark complexion with no facial hair,
and wearing a blue and white ice hockey jersey. The second offender was described as a
black male, 5' 9", 140-145 lbs., dark complexion, short hair and wearing a white shirt.

Officer Masser Tiberghien of the Royce City, Texas Police Department testified at
trial that at 6 a.m. on October 8, 1999, he was dispatched to a Texaco station where three
black males had been seen running away from a black Mercedes. The officer's investigation
revealed that the Mercedes belonged to Mr. Greenwald and had been reported stolen. After
a search of the area, the police apprehended three suspects, Ronnie Pea, Alex Roberts and
Petitioner, who first gave police the false name of Eric Davis. Police later discovered
Petitioner's true identity.

The suspects were returned to Caddo Parish and questioned by Shreveport police
officers. Alex Roberts told police that he was with Petitioner at the hotel in Shreveport.
Roberts stated that Petitioner pointed a pistol at the victim and demanded his car keys and
money. Petitioner denied any involvement with the crime.

**Sufficiency of the Evidence**

Petitioner, on direct appeal, challenged the sufficiency of the evidence to support his conviction. He asserted arguments in a brief filed by his attorney (Tr. 388-391) and in a pro se brief (Tr. 399-403).

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal. Thus, its decision was not "contrary to clearly established Federal law," so Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional

principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the State court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

Petitioner's arguments to this court are essentially the same ones he presented to the state court. He complains that Mr. Greenwald's in-court identification is unreliable because Greenwald was not asked to make a pre-trial identification from a live or photo lineup. Petitioner also notes differences between Greenwald's description of the robber and Petitioner's actual height and weight. The state appellate court characterized the descriptions of the robber given by Greenwald before trial as "generally consistent," deemed the variations in the descriptions "slight," and concluded that Petitioner's physical stature is "substantially similar to that described by the victim." Petitioner also argued that the victim's description of the gunman's complexion as dark did not match what Petitioner called his "light" skin tone, but the jury was able to observe Petitioner's skin tone in the courtroom and assess the reasonableness of the victim's description.

Mr. Greenwald testified that he spent most of the robbery face-to-face with the gunman, that the lighting in the parking lot was "adequate" and that it "wasn't hard" to describe the gunman after being face-to-face with him for three or four minutes and the "only thing separating us was about an eight-inch gun." Greenwald added that his "total

concentration" was on the gunman, that he told police he could identify the man, and that he was confident in his in-court identification. Tr. 171-84. Defense counsel cross-examined Mr. Greenwald about the lighting in the lot and the differences in the descriptions Greenwald had offered of the gunman's height and weight, as well as what counsel suggested was a difference in the complexion description and Petitioner's actual complexion. Mr. Greenwald remained confident in his identification. Tr. 184-89.

Alex Roberts, a sixteen year old who was being held in juvenile detention on armed robbery charges arising from the crime with which Petitioner was charged, testified that he and Petitioner were the two men who committed the crime. He said he knew Petitioner only as "Slim" and that Petitioner was the gunman. Roberts testified that he and Petitioner drove the Mercedes to the nearby Allendale neighborhood and picked up Slim's friend, Ronnie Pea. Roberts testified that he was already serving a sentence for the crime and had not been promised anything in exchange for his testimony. Tr. 216-26. Roberts admitted on cross-examination that Pea was a "good friend" of his and that Pea was at home (implying that Pea had not been charged with a crime). Tr. 226-28.

Petitioner testified that he did not participate in the robbery or know about it. Rather, he said that Alex Roberts picked him up in the car after the crime. He claimed that Alex was alone when he picked him up around midnight and that they picked up Ronnie Pea later that night. Petitioner said he was wearing black shorts and a white T-shirt on that night. On cross-examination, Petitioner admitted that he gave a false name to police when he was

arrested in Texas, denied (contrary to the testimony of police) that he ran from the arresting officers, and admitted that he did drive the car that night. He also claimed that he did not think for one moment that Alex Roberts, an unemployed ninth grader, may have stolen the car. Petitioner said he did not actually ask Alex where he got the car, but he was "under the impression that the car was rented from someone maybe on drugs or something of that nature." Petitioner admitted to a prior conviction for a similar crime, unauthorized use of a motor vehicle. Tr. 238-49.

If the prosecution witnesses were credible, then it was rational to conclude that there was no reasonable doubt as to Petitioner's guilt. Such credibility determinations are squarely within the province of the trier of fact. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Id.

The state appellate court correctly observed that the jury heard the evidence and performed its role of weighing the credibility of the witnesses. Based on the record, the state court concluded that the jury could reasonably have found that the state proved beyond a reasonable doubt that Petitioner was guilty of armed robbery. This court's review of the record indicates that the state court's decision was an entirely reasonable application of Jackson to the facts before it, so habeas relief is not available on this claim.

**Lighting Testimony**

One of the arresting officers from Royce City, Texas, Masser Tiberghien, testified that he and another officer went to a Texaco station after the police received a report that three black males were seen jogging at a fast pace from the Mercedes (which had been reported stolen). The officer testified that, on the night before his court appearance, he stayed at the hotel where the crime was committed. At the request of the prosecutor, he paid specific attention to the quality of the lighting in the parking lot at night. He said that a person could "clearly" see people and faces in the parking lot. Tr. 189-96.

Petitioner argued on direct appeal that the trial court should not have permitted the officer's "repetitive" testimony to supplement that offered by Mr. Greenwald. Petitioner relied solely upon Louisiana judicial authority, although he characterized the admission of the evidence as a violation of due process. The state appellate court discussed the argument at length and determined that, given the lack of objection by the defense and the guiding Louisiana evidentiary principles, the trial court did not abuse its wide discretion on such matters and there was no showing of unfair prejudice. Jordan, 813 So.2d at 1131.

The state objects that Petitioner did not exhaust his state court remedies with respect to this issue because he did not present it to the state courts as a federal claim. See Baldwin v. Reese, 124 S.Ct. 1347 (2004). That argument is likely correct.

The claim also lacks merit. Federal courts do not grant habeas relief based on mere errors in the application of State evidentiary rules or even consider it relevant whether State evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding

standards of Section 2254 merit habeas relief. The Due Process Clause provides a mechanism for relief when a State court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. The sole inquiry is whether the admission violated the Constitution. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). If constitutional error is found, a petitioner's claim will still fail absent a showing that the evidence had a substantial and injurious effect or influence in determining the jury's verdict. Bigby, 340 F.3d at 272. Of course, for this court to order relief, it must find that the state court's decision involved an objectively unreasonable application of those principles. The state court's analysis of this issue was thorough, and its ultimate decision was entirely reasonable, so relief is not permitted with respect to this claim.

**Reading of Bill of Information**

The trial judge, after the parties announced they were ready to proceed, called upon the deputy clerk of court. The deputy clerk stated: "Ladies and Gentlemen, the accused stands charged as follows . . . [T]he State of Louisiana charges that on or about October 8, 1999 at and in the Parish, District and State aforesaid [Petitioner] committed the offense of Revised Statute 14:64 armed robbery . . . ." The clerk went on to describe the basis for the charge, and she noted that Petitioner had pleaded "not guilty" and placed himself before the jury for a decision. Tr. 164.

Petitioner argued in his pro se appellate brief (Tr. 404-05) that by reading the bill of information "the Trial Court informed the jury that Defendant was guilty" and that the court

did not inform the jury that it was only reading the bill of information. The state appellate court, noting that the bill stated only that Petitioner "stands charged" with armed robbery and that Petitioner had pleaded not guilty, rejected the claim. Jordan, 813 So.2d at 1132. The state contends that Petitioner has not exhausted a federal claim with respect to this argument, and that contention appears to be correct. See Baldwin, supra. The argument is also wholly lacking in merit. The relevant portion of the transcript, quoted above, provides no factual basis for this claim.

**Speedy Trial**

Petitioner argued in his pro se appellate brief that the trial court violated his right to a speedy trial when the trial did not commence within the time required by the Louisiana Code of Criminal Procedure. The argument did not specifically invoke any federal authority, although it did contain a generic reference to a "constitutional right to a fast and speedy trial," but Petitioner followed that reference with a citation to state law. Tr. 405. The appellate court nonetheless analyzed the claim under both the Louisiana and United States Constitutions.

This court need only concern itself with the federal constitutional aspect of the claim because federal consideration of a claim that a state has violated its own speedy trial rules is limited to a determination of whether the state's action has violated Petitioner's constitutional right to a speedy trial or to due process. Millard v. Lynaugh, 810 F.2d 1403, 1406 (5th Cir. 1987). A federal habeas court determines whether there was an undue delay between charging and trial by applying the balancing test of Barker v. Wingo, 92 S.Ct. 2182

(1972) based on the following factors: (1) the length of delay, (2) the reason for delay, (3) the assertion of the speedy trial right, and (4) prejudice to the accused.  Cowart v. Hargett, 16 F.3d 642, 646 (5th Cir. 1994).

The state court observed that only fourteen months passed between Petitioner's arrest and the commencement of his trial, during which time Petitioner filed a motion for discovery and a bill of particulars and a preliminary examination was held.  Petitioner argued that any delay made Mr. Greenwald more likely to identify as the perpetrator whomever was present in court in the defendant's seat because the victim's actual memory of the perpetrator's face would diminish over time.  The state court rejected the argument that the fairly ordinary delay caused such prejudice, noting that the victim was confident about his identification based on a clear face-to-face view.  Jordan, 813 So.2d at 1132-33. Petitioner presents the same arguments to this court, but the state court's resolution of the claim was entirely reasonable under the relevant principles, including those set forth in Barker that the state court specifically applied to the facts.

**False Testimony**

Officer Tiberghien was asked if he took any money from the suspects.  He responded, according to the transcript, that a dispatcher advised that approximately $350 had been taken and that he took "that money away from them and put it into evidence." Tr.. 193. When asked from whom he took the money and where he recovered it, Tiberghien could not recall, so he reviewed his written report to refresh his memory.  He then testified that his report stated that he took money from Petitioner at the jail.  The officer identified Exhibit S-1 as $35 in cash

that he had taken from Petitioner. Tr. 193-94. He repeated on cross-examination that he took the $35 from Petitioner's person. Tr. 198-99. There was no explanation for the earlier reference to taking $350 from the suspects.

Petitioner argued in his pro se appellate brief that the police officer's testimony was perjured because he once indicated that he took the money on the road and, later, at the jail. Petitioner also contends that the officer never seized any money from him because the $35 was deposited in his inmate account at the Royce City jail and later transferred to his account in the Caddo Parish jail. Petitioner submitted to the state appellate court and to this court documents regarding his inmate accounts.

Petitioner did not invoke any federal law with respect to this claim, and the state has raised an exhaustion defense. The state appellate court also viewed the claim as presenting only state law issues. It considered the officer's testimony consistent after he refreshed his memory from his written report. It also found the record "devoid of evidence" that the money had been planted on Petitioner. The court noted that Petitioner testified, when asked if he saw any of the stolen money, "I had money in my pocket." Tr. 247. The state court found the assignment of error without merit. Jordan, 813 So.2d at 1131-32.

A conviction obtained through the use of false evidence, if solicited by the prosecutor or knowingly allowed to go uncorrected, may void a conviction under the Fourteenth Amendment. Napue v. Illinois, 79 S.Ct. 1173 (1959). To prevail under Napue, a petitioner must prove that the challenged testimony was (1) false, (2) known to be so by the state, and (3) material. Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005).

Petitioner has shown only that the officer had a poor recollection of precisely when and where he discovered and/or seized the $35. He has not shown that the officer gave false testimony that was known to the prosecutor. Furthermore, the testimony at issue was not sufficiently material, in light of the overall evidence, to warrant a new trial even if it satisfied the other elements of <u>Napue</u>. The $35 the officer claimed to have seized from Petitioner was no more than one might expect to find on any citizen, so it did almost nothing to implicate Petitioner in the crime. And it is not critical whether the officer seized the $35 or merely recorded its discovery and then allowed it to be deposited in Petitioner's inmate account. What is important to this issue (although it provides only minimal evidence for the prosecution) is that the officer found a small amount of cash on Petitioner, and Petitioner testified that he did have money in his pockets. The state court's adjudication of this issue was not an objectively unreasonable application of <u>Napue</u>.

**Ineffective Assistance of Counsel**

### A. <u>Strickland</u> Issues Raised on Direct Appeal

Defense counsel filed before trial a motion in limine to exclude Mr. Greenwald's in-court identification. He argued that Mr. Greenwald would inevitably identify the person sitting in the Defendant's spot in the courtroom and that the identification would be prejudiced by the lack of a pre-trial lineup. The prosecutor explained that Mr. Greenwald had been shown photo lineups of the other two suspects in the crime shortly after the three men were arrested, but Greenwald was not shown a lineup including Petitioner because police were still operating under the false identity provided by Petitioner and did not have

a picture. (Presumably, the police were following the common practice of locating prior mug shots of the suspects to use in the photo lineups.) The prosecution argued that the probative value of the in-court identification would outweigh any prejudice stemming from a lack of prior identification because Mr. Greenwald would lay a foundation as to the lighting and his opportunity to clearly view the face of the gunman. The trial judge concluded that the probative value of the evidence outweighed any undue prejudice, and he denied the motion in limine. He added that defense counsel could cross-examine Mr. Greenwald with respect to the issues he raised. Tr. 159-62.

Defense counsel did cross-examine Mr. Greenwald about the lighting in the lot, his ability to observe the gunman, and the perceived inconsistencies between Mr. Greenwald's description of the gunman to police and Petitioner's actual height, weight and complexion. Counsel did not, despite his earlier focus on the issue, bring up the fact that Mr. Greenwald had not previously identified Petitioner in a live or photo lineup. Tr. 184-89.

Detective Carolyn Eaves testified that when she received information from Texas that three men had been arrested in connection with the crime, she tried to prepare photo lineups for the three men. She found pictures of Alex Roberts and Ronnie Pea, but she could not find any information on the name Eric Davis and the date of birth Petitioner had provided police. She said she would have shown Mr. Greenwald a lineup if Petitioner had provided a correct name. Defense counsel's brief cross-examination focused on the lack of a pre-trial lineup, thus bringing that issue to the attention of the jury despite it being omitted from the cross-examination of Mr. Greenwald. Tr. 200-04.

Defense counsel, in closing arguments, focused on possible inconsistencies in descriptions and other factors that he believed weakened the reliability of Mr. Greenwald's identification. He specifically and forcefully pointed out that police had from October 8, 1999 until the trial, fourteen months later, to put together a photo lineup for Mr. Greenwald. (It had not taken police long to learn Petitioner's true identity.) Rather, the prosecution simply had Mr. Greenwald come to court to, according to defense counsel, point the finger at the defendant and say "that's him." Tr. 262.

Petitioner argued in his pro se appellate brief that defense counsel was ineffective because he "abandoned" the "lack of pretrial lineup" issue after the motion in limine was denied. Petitioner suggested that the trial judge "continuously" raised the issue with defense counsel, but counsel nonetheless ignored the issue. Petitioner also complained that counsel allowed the prosecution to submit evidence of the $35 that was "falsely" put in the record, allowed the prosecution to "ask several irrelevant (but unspecified) questions during trial," and did not object to the Texas officer's testimony about lighting. Tr. 407.

The state appellate court recited the applicable <u>Strickland</u> standard and concluded that Petitioner had failed to meet his burden of proving either the performance or prejudice prongs of the claim. <u>Jordan</u>, 813 So.2d at 1133-34. The record, discussed above, shows that counsel did not abandon the lineup issue. He may not have raised the issue during his cross-examination of Mr. Greenwald, but he did focus on it during his cross-examination of Detective Eaves, and he certainly stressed the issue during his closing argument. With respect to the $35, it was discussed above that there is no objective basis for finding that the

evidence was planted or false, and the evidence was frankly not of any particular significance. Petitioner does not identify the irrelevant questions to which counsel should have objected. With respect to the lighting testimony, Petitioner suggests that counsel should have pointed out the witness's lack of knowledge about the specific night of the crime (moon phase, fogginess, etc.). That is an area that an attorney might have made inquiry into and perhaps achieved some degree of success in attacking the lighting testimony[1], but counsel is not held to a standard of perfection under <u>Strickland</u>. After considering the record and the arguments on this issue, the undersigned concludes that the state court's decision was not an objectively unreasonable application of <u>Strickland</u>.

### B. <u>Strickland</u> Issues Raised in Post-Conviction Application

The state courts also reasonably rejected other <u>Strickland</u> claims that Petitioner presented in a post-conviction application. Petitioner argued that counsel was ineffective because he (1) permitted Mr. Greenwald to commit perjury and (2) allowed Alex Roberts to testify despite being incompetent. Tr. 428-38. Even though these <u>Strickland</u> claims were based on different grounds from the claims asserted on direct appeal, the state trial court denied the application based on a finding that the <u>Strickland</u> issue had been fully litigated on direct appeal. Tr. 450-51. The appellate court agreed that the claim was repetitive and added a brief finding that the claims were also without merit. Tr. 482. The Supreme Court of Louisiana denied writs without comment. Tr. 524. That procedural history gives rise to a

_____

[1] On the other hand, the officer may have responded that he had compared the moon phase, cloud cover, etc. for the two nights and found them to be identical.

potential procedural bar defense to presenting the claims as grounds for federal habeas relief, but the claims' lack of merit, as explained below, provides a more sound basis for disposition.

The claim that counsel allowed Mr. Greenwald to perjure himself is based on nothing more than the perceived inconsistencies in the physical descriptions and some other differences between Mr. Greenwald's original description of the crime for the police and his later trial testimony. Not every small inconsistency in height, weight, etc. is equivalent to perjury. Mr. Greeenwald's description of the robber is not perjury if a tape measure and scale do not agree with precision. In any event, counsel adequately addressed the relevant differences during in his trial presentation, and he was not required to make a nuisance of himself by quibbling over every insignificant detail to avoid being branded constitutionally deficient. Petitioner has not made an adequate showing that Mr. Greenwald committed perjury or that counsel incompetently allowed such testimony to go unnoticed.

Petitioner's argument that Alex Roberts was incompetent is based on information in a Shreveport police report that the arresting Texas officer told Shreveport police that Texas procedure allowed an officer to speak to juveniles without a parent but required a judge to advise the juvenile of his rights and determine his competency before the juvenile could provide a *written* statement. Alex Roberts told the Texas officer that he was present when the car was stolen and that "Eric Davis" was the suspect with the gun. The officer took Roberts before a judge, but Roberts could not write out a statement because he was illiterate. The judge determined, therefore, that Roberts was not competent to provide a *written*

statement.  Tr. 433, 441.  That Roberts was illiterate and deemed incompetent, under Texas

law, to provide a written statement in no way rendered him incompetent to provide oral

testimony in Louisiana, where the rules provide that every person of "proper understanding"

is competent to be a witness except as otherwise provided by Legislation.  L. C. E. art. 601.

Competency usually turns on whether the witness is able to understand the difference

between truth and falsehood, and young children are often deemed perfectly competent to

testify. <u>See</u> <u>State v. Deutor</u>, 842 So.2d 438, 442 (La. App. 4th Cir. 2003).  There is no factual

basis to believe that Alex Roberts would be incompetent under those standards, so counsel

was not constitutionally deficient for failing to challenge his testimony on grounds of

competence.

**Excessive Sentence**

Petitioner was subjected to an enhanced penalty based on his adjudication as a second

felony offender.  The court requested a presentence investigation report.  Tr. 291.  The

potential sentence for the basic armed robbery offense was not less than 10 years nor more

than 99 years, and the multiple offender statutes required that the term be not less than half

the longest term and not more than twice the longest term prescribed for a first conviction.

Thus, the sentencing range was approximately 49.5 years to 198 years.  The trial judge,

without articulating reasons on the record, imposed a sentence of 58 years, near the low end

of the statutory range.  Tr. 295.

Both the brief filed by appellate counsel and Petitioner's pro se brief contained

argument that the trial court did not comply with the sentencing procedures set forth in La.

C. Cr. P. art 894.1 and that the sentence was excessive. The excessiveness arguments did not invoke the Eighth Amendment or other federal constitutional grounds. Rather, they relied upon Article I, § 20 of the Louisiana Constitution and related jurisprudence. The state appellate court held that the complaint that the judge did not adequately articulate justification for the sentence was waived by the lack of a motion for reconsideration of sentence, leaving the claim subject to review solely for a claim of excessiveness. The appellate court reviewed the relevant standards under Article I, § 20, noted that the presentence investigation showed that Petitioner was on active supervised probation for unauthorized use of a movable when he committed the present offense, and that the sentence was at the low end of the sentencing range. Those factors convinced the appellate court to reject the claim of an excessive or disproportionate sentence. Jordan, 813 So.2d at 1134-35.

The presentation of this claim in state law terms likely means that a federal claim was not exhausted. See Baldwin v. Reese, supra. The claim also lacks merit. If a sentence is within statutory limits, a habeas petitioner is not entitled to relief unless he can show that the sentencing decision was "wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) (internal citations and quotations omitted). See also Davis v. Cain, 44 F.Supp. 2d 792, 796 (E.D. La. 1999). Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Recent decisions from the Supreme Court also make plain that any severity or proportionality attacks on the sentence in this case do not come close to meriting relief.

See Lockyer v. Andrade, 123 S.Ct. 1166 (2003) and Ewing v. California, 123 S.Ct. 1179 (2003).  And failure of a Louisiana court to comply with the procedural requirements of Article 894.1 is not grounds for habeas relief. Haynes, 825 F.2d at 924.

**Conclusion**

The court has reviewed each of Petitioner's properly presented arguments and assessed the state court's adjudication of the claims pursuant to the standards set forth in 28 U.S.C. § 2254(d).  None of the claims, as explained above, merit relief from the conviction or sentence under that demanding standard.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that Petitioner's complaint be **dismissed with prejudice.**

**<u>Objections</u>**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 29th day of August, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE